acm
# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| **JACK JACKSON and WRAY NIELANDER,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v.  ) | Case No. 03-4181-JAR |
| ) | |
| **KANSAS COUNTY ASSOCIATION** ) | |
| **MULTILINE POOL; THOMAS JOB;** ) | |
| **THE BOARD OF COUNTY** ) | |
| **COMMISSIONERS OF THE COUNTY** ) | |
| **OF LINCOLN, KANSAS; DWIGHT** ) | |
| **HELLER; DOUG GOMEL; JOHN** ) | |
| **KOBBEMAN; and DAWN HARLOW,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM ORDER GRANTING PLAINTIFFS' OBJECTION TO MAGISTRATE'S ORDER

This matter comes before the Court on the plaintiffs' Objection (Doc. 137) to the Magistrate Judge's October 20, 2005 Order (Doc. 135) granting in part and denying in part plaintiffs' motion for leave to file a second amended complaint (Doc. 113). Plaintiffs object to Judge Sebelius' conclusion that plaintiffs' proposed amendments, which would revive claims previously dismissed by this Court in its January 19, 2004 Orders (Docs. 73 and 74), would be futile. For the reasons set forth below, the Court grants plaintiffs' objection.

## I.     Standard of Review

With respect to a magistrate judge's order relating to nondispositive pretrial matters, the district court does not conduct a de novo review; rather, the court applies a more deferential standard by which the moving party must show that the magistrate judge's order is "clearly

erroneous or contrary to law."[1]  However, when the magistrate judge's order denies a motion to amend and a claim or defense is not permitted to be asserted in the case, several courts have found such a ruling to be dispositive and concluded that the district court should review it de novo.[2]  Because Judge Sebelius' Order analyzed plaintiffs' motion under a futility standard and denied amendment to claims already dismissed by this Court upon finding that such claims as amended would not survive a motion to dismiss, the ruling has the same effect as an order dismissing a claim.[3]  Therefore, the Court concludes that Judge Sebelius' decision denying leave to amend the claims already dismissed by this Court is a dispositive ruling subject to de novo review.

Fed. R. Civ. P. 72(b) allows a party to provide specific, written objections to the magistrate judge's order.  The rule states that "[t]he district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions."[4]

## II.     Procedural History

In August 2003, plaintiffs filed this civil rights action against defendants in Shawnee County, Kansas District Court.  Defendants removed the action to this Court on September 30,

---

[1] *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461-62 (10th Cir. 1988); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)).

[2] *Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1157 (D. Kan. 2000) (citing *Allende Mut. Ins. Co. v. Rutherford*, 178 F.R.D. 1, 2 (D. Me. 1998)).

[3] *See Cuenca v. Univ. of Kan. Sch. of Journalism*, 205 F. Supp. 2d 1226, 1228-29 (2002) (holding that a magistrate judge's order which has the effect of dismissing potential claims and parties from the suit must be reviewed using a de novo standard).

[4] Fed. R. Civ. P. 72(b).

2003.[5] After plaintiffs were granted leave to amend, they filed their First Amended Complaint on May 3, 2004.[6] In the amended Complaint, plaintiffs assert the following claims against all of the defendants under 42 U.S.C. § 1983 and Kansas common law: (1) violation of Jackson's due process and deprivation of Jackson's liberty interest (Count I); (2) conspiracy to deprive Jackson of a liberty interest, to abuse process, and to maliciously prosecute plaintiffs (Count II); (3) abuse of process (Count III); (4) malicious prosecution (Count IV); (5) tortious interference with an existing contractual relationship (Count V); and (6) civil conspiracy to abuse process; maliciously prosecute; and interfere with an employment contract (Count VI). Additionally, plaintiffs assert a defamation and false light invasion of privacy claim (Count VII) against defendants KCAMP, Heller, Harlow, and O'Hare.

On January 19, 2005, this Court issued two Orders[7] granting in part and denying in part motions to dismiss filed by defendants KCAMP and Job[8] and defendants BOCC, Heller, Gomel, Kobbeman, Harlow, and O'Hare ("Lincoln County defendants").[9] With respect to defendants KCAMP and Job, the Court dismissed the following claims: (1) violation of Jackson's due process and deprivation of Jackson's liberty interest; (2) conspiracy to deprive Jackson of a liberty interest, to abuse process, and to maliciously prosecute plaintiffs; (3) abuse of process; (4) malicious prosecution; and (5) defamation and false light invasion of privacy claim. Plaintiffs' claims for tortious interference and conspiracy to interfere are currently the only

---

[5](Doc. 1.)

[6](Doc. 24.)

[7](Docs. 73; 74.)

[8](Doc. 26.)

[9](Doc. 28.)

counts remaining against defendants KCAMP and Job.

With respect to the Lincoln County defendants, the Court dismissed the claim for conspiracy to deprive Jackson of a liberty interest against defendants Harlow and O'Hare only. The Court also dismissed the abuse of process and malicious prosecution claims, meaning the following claims against the Lincoln County defendants still remain: (1) violation of Jackson's due process and deprivation of Jackson's liberty interest; (2) conspiracy to deprive Jackson of a liberty interest against BOCC, Heller, Gomel and Kobbeman only; (3) defamation and false light invasion of privacy against Harlow and O'Hare only; (4) tortious interference; and (5) and conspiracy to interfere.

On April 29, 2005, plaintiffs filed a motion for leave to file a second amended complaint to provide additional support to the remaining claims and to revive Jackson's violation of due process and deprivation of liberty interest claims, along with his conspiracy claim, against KCAMP, Job, Harlow, and O'Hare.[10]  The motion also sought to revive plaintiffs' claims for malicious prosecution and conspiracy to maliciously prosecute to preserve the issue for appeal. Judge Sebelius, in an October 28, 2005 Order, granted in part and denied in part plaintiffs' motion for leave to amend.[11]  He granted plaintiffs leave to amend the remaining claims against the defendants, but denied plaintiffs' motion with respect to the claims which this Court had already dismissed in the January 19, 2005 Order, after finding that amendment to such claims would be futile.

Afterwards, plaintiffs filed the instant motion for review of Judge Sebelius' Order

---

[10](Doc. 113.)

[11](Doc. 135.)

arguing that his decision denying plaintiffs leave to amend the claims of deprivation of liberty interest and conspiracy to deprive Jackson of his liberty interest is clearly erroneous and contrary to law.[12] The Lincoln County defendants and defendants KCAMP and Job filed responses to plaintiffs' motion.[13] After reviewing the parties filings, the Court is now prepared to address plaintiffs' arguments.

## III.   Defendants' Failure to Respond to Plaintiffs' Motion For Leave to Amend

Plaintiffs assert that Judge Sebelius' Order was unclear as to whether the claims against Harlow and O'Hare may be revived by plaintiffs in their Second Amended Complaint. While defendants KCAMP and Job responded in opposition to plaintiffs' motion for leave to amend, defendants Harlow and O'Hare did not file a response. Initially in his Order, Judge Sebelius explains that under D. Kan. R. 7.4, a court treats a motion, to which no timely response is filed, as uncontested and ordinarily grants the motion.[14] However, the Order clearly concludes that plaintiffs' motion is "denied insofar as it attempts to revive any claims that have been dismissed from this action either in their entirety or as to one or more separate defendants."[15] Because this Court dismissed the claims against Harlow and O'Hare in its January 19, 2004 Order, Judge Sebelius' Order clearly denies plaintiffs' attempts to revive such claims.

---

[12](Doc. 137.)

[13](Docs. 141 and 142.)

[14]D. Kan. R. 7.4 provides:
>   The failure to file a brief or response within the time specified within Rule 6.1(d) shall constitute a waiver of the right thereafter to file such brief or response, except upon a showing of excusable neglect. . . . If a respondent fails to file a response within the time required by Rule 6.1(d), the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice.

[15](Doc. 135 at 9.)

Plaintiffs further assert that because Harlow and O'Hare did not respond to plaintiffs' motion for leave to file a second amended complaint, these defendants acquiesced to plaintiffs' requests. Because of this failure to respond, plaintiffs argue that Judge Sebelius should not have addressed the motion to amend as it related to the claims against Harlow and O'Hare. And, because Judge Sebelius did address these claims and denied amendment to these claims, plaintiffs argue that his decision is clearly erroneous and contrary law.

On the contrary, the Court finds that it was appropriate for Judge Sebelius to address the claims against Harlow and O'Hare. "While uncontested motions are ordinarily granted, they are not invariably granted."[16] Judge Sebelius reviewed plaintiffs' proposed Second Amended Complaint, and he independently determined that plaintiffs' attempts to revive claims against Harlow and O'Hare, which this Court has already dismissed, would be futile. Therefore, the Court overrules plaintiffs' objection to Judge Sebelius' Order on this ground.

## IV.   Judge Sebelius' Denial of Plaintiffs' Motion to Amend the Dismissed Claims

Fed. R. Civ. P. 15(a) governs the amendment of pleadings. Because of the advanced stage of the litigation in this case, the second sentence of Rule 15(a) applies, which contemplates that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."[17] Thus, motions to amend are matters of discretion for the trial court.[18] The Tenth Circuit has offered guidance by

---

[16]*Green v. Dean*, No. 03-3225-JWL, 2005 WL 1806427, at *1 n.2 (D. Kan. Aug. 1, 2005) (Lungstrum, C.J.) (citing D. Kan. R. 7.4 and finding it appropriate for the court to conduct an independent evaluation of plaintiff's motion despite defendants' failure to file a timely response).

[17]Fed. R. Civ. P. 15(a).

[18]*Woolsey v. Marion Lab., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991).

6

listing factors for courts to consider, such as futility of the amendment, a showing of undue delay, undue prejudice to the non-moving party, or bad faith of the moving party.[19]

In this case, all of the defendants argue that plaintiffs' proposed amendments to revive the dismissed claims are futile because, even with the additional allegations, plaintiffs' claims would be dismissed. "If a proposed amendment is not clearly futile, then denial of leave to amend is improper."[20] The Court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or otherwise fails to state a claim upon which relief may be granted.[21] "Thus, the court must analyze a proposed amendment as if it were before the court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."[22]

The Court will dismiss a cause of action under Rule 12(b)(6) only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief,[23] or when an issue of law is dispositive.[24] The Court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff.[25] The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he

---

[19]*Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

[20]6 Charles Alan Wright et al., *Federal Practice & Procedure* § 1487, at 637-43 & n.23 (2d ed. 1990).

[21]*Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992); *Schepp v. Fremont County, Wyo.*, 900 F.2d 1448, 1451 (10th Cir. 1990).

[22]*Sheldon v. Vermonty*, 204 F.R.D. 679, 682 (D. Kan. 2001).

[23]*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998).

[24]*Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

[25]*Intercon, Inc. v. Bell Atl.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

or she is entitled to offer evidence to support the claims.[26]

### A.     Defendants KCAMP and Job

Plaintiffs seek to amend their Complaint by adding specific allegations detailing how KCAMP and Job acted under color of state law and willfully participated in the violation of Jackson's due process rights and the denial of his liberty interests.

#### 1.     Violation of Due Process

As previously stated by this Court in its January 19, 2005 Order, in order to state a claim for violation of due process under 42 U.S.C. section 1983, a plaintiff must allege that defendants acted under color of state law and deprived the plaintiff of a federal or constitutional right.[27]  To act under color of state law for section 1983 purposes does not require that the defendant be an officer of the State; it is enough that he is a willful participant in joint action with the State or its agents.[28]  Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of section 1983 actions.[29]  Where a plaintiff has alleged private defendants have engaged in more than one allegedly unconstitutional act, it is important to note that "an individual or entity may be engaged in state action for one purpose but not for another."[30]  As such, the proper inquiry is whether the defendants' conduct constitutes state action in the specific instance, not whether they can be given a blanket description of "state

---

[26]*Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scheurer*, 468 U.S. 183 (1984).

[27]*Zhu v. Fisher, Cavanaugh, Smith & Lemon, P.A.*, 151 F. Supp. 2d 1254, 1258 (D. Kan. 2001).

[28]*Bailey v. Kenney*, 791 F. Supp. 1511, 1522 (D. Kan. 1992).

[29]*Id.*

[30]*Keeling v. Schaefer*, 181 F. Supp. 2d 1206, 1228 (D. Kan. 2001).

actor."[31]

Plaintiffs bring a claim for violation of due process stemming from the BOCC's termination of Jackson's employment and from the BOCC's denial of a hearing requested by Jackson.  "[T]he only proper defendants in a Section 1983 claim are those who represent the state in some capacity, whether they act in accordance with their authority or misuse it."[32]  The Tenth Circuit has set forth several tests used to determine whether a private entity is acting under color of state law and is subject to section 1983 liability.[33]  Courts are directed to focus on the fact-intensive nature of the state action inquiry and may find state action "'[i]f, though *only if*, there is such a close nexus *between the State and the challenged action* that seemingly private behavior may be fairly treated as that of the State itself.'"[34]  Here, plaintiffs seek to employ the "joint action" standard to hold KCAMP and Job liable under section 1983.  In order to hold a private actor liable under the "joint action" standard, "it must be shown that the private person was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State."[35]  Under the "joint action" test, a section 1983 claim may arise when a private party

---

[31]*Id.*

[32]*Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).

[33]*See id.* (describing the nexus text, the symbiotic relationship test, the joint action test, and the public functions test).

[34]*Johnson v. Rodrigues*, 293 F.3d 1196, 1206 (10th Cir. 2002) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)) (emphasis in original).

[35]*Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996) (quoting *Lee v. Town of Estes Park*, 820 F.2d 1112, 1114 (10th Cir. 1987)).

acts "in concert" with state officials in depriving an individual of constitutional rights.[36] The private party and state officials must "share a common, unconstitutional goal."[37]

Plaintiffs' Second Amended Complaint alleges that defendants KCAMP and Job acted under color of state law when they participated in the termination of Jackson's employment and in the denial of a hearing for Jackson. Plaintiffs' factual allegations supporting this claim include numerous phone calls, faxes, and letters between the defendants.[38] Defendants KCAMP and Job dispute the validity of these factual allegations based on testimony and evidence derived through depositions.[39] At the motion to dismiss stage, however, the Court cannot look to matters beyond the pleadings in determining whether plaintiffs' claims can survive a motion to dismiss.[40] Defendants' arguments are more appropriate for a summary judgment motion, that this Court may entertain in the future, but not at this time. Because the Court accepts as true all well-pleaded facts and draws all reasonable inferences from those facts in favor of the plaintiffs, plaintiffs' amended claims, given the level of detail plaintiffs now provide, would survive a motion to dismiss. Therefore, plaintiffs' proposed amendments to the claims against defendants KCAMP and Job are not futile, and plaintiffs must be granted leave to amend their Complaint.

---

[36]*Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 596 (10th Cir. 1999); *Gallagher*, 49 F.3d at 1453.

[37]*Anaya*, 195 F.3d at 596 (citations omitted).

[38](Doc. 113, Attach. 2 ¶ 70(a)-(r).)

[39]*See, e.g.*, (Doc. 142 at n.5) ("Job testified in his deposition that the [April 8, 2002] letter was not meant to suggest or propose that Jackson be terminated; he testified that the letter was meant to address solely an employment claim regarding two dispatchers.").

[40]*See* Fed. R. Civ. P. 12(b)(6) ("[a] motion to dismiss for failure to state a claim upon which relief can be granted must be converted into a motion for summary judgment whenever the district court considers matters outside the pleadings."); *see also Lowe v. Town of Fairland,* 143 F.3d 1378, 1381 (10th Cir. 1998) (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) and stating that reversible error may occur if the district court considers matters outside the pleadings but fails to convert the motion to dismiss into a motion for summary judgment).

### 2.     Deprivation of a Liberty Interest

To state a claim for deprivation of a liberty interest in good name and employment, a plaintiff must assert that: (1) the defamatory statements impugned his good name, reputation, honor, or integrity; (2) the defamatory statements were false; (3) the defamatory statements occurred in the course of terminating plaintiff and foreclosed other employment opportunities; and (4) the defamatory statements were published.[41] Jackson claims that he was denied the liberty interest in his good name when "Job told Nielander that Jackson was a 'bad apple' and urged Nielander to dismiss Jackson."[42] In its last Order, this Court held that the statement that Jackson was a "bad apple" is not the type of allegation that implicates a liberty interest; and the Court dismissed this claim.

In the proposed Second Amended Complaint, Jackson further claims that an April 8, 2002, letter from Job and KCAMP, that was read during an open session, was "published and impugned Jackson's good name in the course of his termination."[43] Plaintiffs refer to the letter as a "thinly veiled" accusation against Jackson when the letter urged the BOCC to make "immediate changes . . . in the operation and management of the Lincoln County Sheriff's Department."[44] Defendants argue that this letter does not support Jackson's claim because **it makes no mention of his name or his actions as a member of the Lincoln County Sheriff Department.** Again, defendants' argument is more appropriate for a summary judgment motion

---

[41]*Cooper v. Sedgwick County, Kan.*, 206 F. Supp. 2d 1126, 1138-39 (D. Kan. 2002).

[42](Doc. 113, Attach. 2 ¶ 58.)

[43](Doc. 113, Attach. 2 ¶ 57.)

[44](*Id.*)

because the Court will only look to plaintiffs' well-pleaded factual allegations and will not look to matters outside of the pleadings at the motion to dismiss stage.

Because the Court accepts all reasonable inferences in favor of the plaintiffs at the motion to dismiss stage, Jackson's proposed amendments to his deprivation of liberty interest claim would survive dismissal. Therefore, plaintiffs motion for leave to amend this claim is granted.

### B. Defendants Harlow and O'Hare

Additionally, plaintiffs seek to amend their Complaint by adding specific allegations that defendants Harlow and O'Hare personally participated in the decision to deny Jackson a name-clearing hearing, reviving the conspiracy claim. In the January 19, 2005 Order, this Court dismissed the section 1983 conspiracy claims against Harlow and O'Hare because plaintiffs had failed to allege that these defendants participated in the deprivation of Jackson's due process rights.[45] However, the section 1983 claims of Count I remain against all Lincoln County defendants because they did not seek dismissal of this claim.[46] To state a claim under section 1983, a plaintiff must allege that individual defendants personally participated in the alleged constitutional deprivations.[47] Such personal participation must be alleged by showing an affirmative link between the defendant and the challenged conduct, either through the defendant's actual conduct or the defendant's acquiescence in a constitutional violation.[48]

---

[45](Doc. 74 at 15.)

[46](Doc. 74 at 19-20.)

[47]*Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).

[48]*Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Kite v. Kelley*, 546 F.2d 334, 336-37 (10th Cir. 1976).

Plaintiffs have amended their Complaint by adding allegations to Count I, stating that Harlow and O'Hare participated in the joint activity of terminating Jackson's employment and denying Jackson a hearing.  Plaintiffs have also amended Count II to allege that Harlow and O'Hare participated in the conspiracy to violate Jackson's due process rights and deprive him of his liberty interest.  The Lincoln County defendants also point the Court to evidence obtained through deposition testimony to refute the allegations against them in plaintiffs' proposed Second Amended Complaint.[49]  However, as previously explained, the Court cannot look to matters outside of the pleadings at this stage.  Accepting all of plaintiffs' well-pleaded factual allegations as true, plaintiffs have stated a claim in their proposed Second Amended Complaint upon which relief can be granted.  Therefore, the Court must freely allow plaintiffs to amend the claims against Harlow and O'Hare.

## V.     Conclusion

Given the level of detail that plaintiffs now provide in the proposed Second Amended Complaint, plaintiffs have exceeded what is required to overcome a challenge under Fed. R. Civ. P. 12(b)(6).  While the reasoning in Judge Sebelius' opinion is sound, this Court cannot say that plaintiffs' proposed amendments are futile in light of the low hurdle that plaintiffs must meet to survive a motion to dismiss.  Therefore, because plaintiffs' proposed amendments are not futile, the Court must freely grant plaintiffs' motion for leave to amend.

**IT IS THEREFORE ORDERED** that upon the Court's de novo review of the issues and arguments presented, the plaintiffs' objections to the magistrate judge's order (Doc. 137) that denied in part their motion for leave to amend (Doc. 113) are **GRANTED**.

---

[49](Doc. 141at 2.)

13

Dated this 6th day of December 2005.

    S/ Julie A. Robinson
**Julie A. Robinson**
**United States District Judge**